**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAEMY OH and YONG K. OH, | ) | |
| | ) | |
| Plaintiffs | ) | Case No. 1:18-cv-07214 |
| | ) | |
| vs. | ) | |
| | ) | Hon. Sharon Johnson Coleman |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant | ) | |

**OCWEN LOAN SERVICING, LLC'S 12(b)(6) MOTION TO DISMISS**
**COUNTS II, IV AND V OF PLAINTIFFS' COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

Simon Fleischmann
*sfleischmann@lockelord.com*
Irina Dashevsky
*irina.dashevsky@lockelord.com*
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312-443-0700

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..............................................................................................................1

ALLEGATIONS IN THE PLEADINGS..........................................................................2

LEGAL STANDARD........................................................................................................4

ARGUMENT ....................................................................................................................5

      I.       The Ohs fail to state a claim under the FDCPA because they fail to allege facts to support the conclusion that Ocwen is a "debt collector." ...........................5

      II.     The Ohs' TILA claim fails because Ocwen is a servicer and therefore not subject to liability under TILA........................................................................................7

      III.    The Ohs fail to state a claim under the TCPA because they alleges no facts to support their conclusion that Ocwen utilized an ATDS to call them. .................9

           A. FCC's rule making and the impact of *ACA International v. FCC* ....................10

           B. The TCPA restricts dialing of randomly and sequentially generated numbers, not predictive dialing..........................................................................14

           C. The Ohs failed to plead any facts establishing that Ocwen's dialer had the present capacity to generate random or sequential numbers............................15

      IV.    The statute of limitations bars the Ohs' TCPA claim in part................................16

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACA Int'l v. FCC*,
   855 F.3d 687 (D.C. Cir. 2018) ...............................................................9, 10, 12, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................4

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ...........................................................................................4

*Bailey v. Security Nat. Servicing Corp.*,
   154 F.3d 384 (7th Cir. 1998) ...............................................................................5

*Banks v. Green Tree Servicing, LLC*,
   Case No. 14–cv–2825, 2015 WL 1058124 (N.D. Ill. Mar. 5, 2015) .........................8

*Blanton v. Roundpoint Mortgage Servicing Corp.*,
   No. 15 C 3156, 2016 WL 3653577 (N.D. Ill. July 7, 2016) ....................................8

*Blow v. Bijora*,
   855 F.3d 793 (7th Cir. 2017) ...............................................................................11

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ...........................................................................4, 16

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,
   606 F.3d 443 (7th Cir. 2010) ...............................................................................12

*Dominguez v. Yahoo, Inc.*,
   629 Fed. App'x 369, (3rd Cir. 2015) ....................................................................14

*Dominguez v. Yahoo, Inc.*,
   894 F.3d 116 (3d Cir. 2018).................................................................................14

*E.E.O.C. v. Concentra Health Servs., Inc.*,
   496 F.3d 773 (7th Cir. 2007) ...............................................................................4

*Fleming v. Associated Credit Services, Inc.*,
   Civ. No. 16-3382 (KM) (MAH), 2018 WL 4562460, (D.N.J. Sept. 1, 2018) ........13

*Horton v. Country Mortg. Services, Inc.*,
   No. 07 C 6530, 2010 WL 55902 (N.D. Ill. Jan. 4, 2010) ....................................8, 9

*Hutchins v. Fairbanks Cap. Corp.*,
No. 02 C 2256, 2003 WL 1719997 (N.D. Ill. Mar. 31, 2003) ...................................................6

*Intercom Ventures, LLC v. FasTV, Inc.*,
No. 13 C 232, 2013 WL 2357621 (N.D. Ill. May 28, 2013) ......................................................1

*Johnson v. City of Kankakee*,
397 Fed. App'x 238 .............................................................................................................1, 10

*Johnson v. Yahoo!, Inc.*,
No. 14 CV 2028, 2018 WL 6426677 (N.D. Ill. Nov. 29, 2018) ..................................10, 12, 14

*Keyes v. Ocwen*,
335 F. Supp. 3d 951 (E.D. Mich. 2018)........................................................................14, 16

*Marshall v. CBE Group, Inc.*,
No.: 2:16–cv–02406–GMN–NJK, 2018 WL 1567852 (D. Nev. Mar. 30, 2018)...................13

*Obi v. Chase Home Finance LLC*,
No. 11-cv-3993, 2012 WL 1802450 (N.D. Ill. May 15, 2012)..................................................5

*Payne v. Seterus Inc.*,
No. 16-0203, 2016 WL 4521659, (W.D. La. Aug. 26, 2016)....................................................9

*Pinkus v. Sirius XM Radio, Inc.*
319 F. Supp. 3d 927 (N.D. Ill. 2018) .............................................................10, 11, 12, 13, 14

*Ruth v. Triumph Partnerships*,
577 F.3d 790 (7th Cir. 2009) ....................................................................................................5

*Schlosser v. Fairbanks Cap. Corp.*,
323 F.3d 534 (7th Cir. 2003) ............................................................................................5, 6, 7

*Shilo v. Ditech Financial LLC*,
No. 16-11564, 2017 WL 3202725 (D. Mass. June 26, 2017)....................................................9

*Smith v. Aitima Medical Equipment, Inc.*,
No. ED CV 16-00339-AB, 2016 WL 4618780 (C.D. Cal. Jul. 29, 2016)...............................15

*Thompson-Harbach v. USAA Federal Savings Bank*,
No. 15-CV-2098-CJW-KEM, 2019 WL 148711 (N.D. Iowa Jan. 19, 2019)...................13, 15

*Toney v. Quality Resources, Inc.*,
75 F. Supp. 3d 727 (N.D. Ill. 2014) .......................................................................................15

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) ....................................................................................................8

*Vincent v. The Money Store*,
736 F.3d 88 (2d Cir. 2013)........................................................................................................7

iv

**Federal Regulations and Statutes**

12 C.F.R. § 1026.36(c) ........................................................................... 7, 8, 9

12 C.F.R. § 1026.41(a)(2) ...................................................................... 7, 9

15 U.S.C. §1602(g) ................................................................................ 7

15 U.S.C § 1638(f) ................................................................................ 7

15 U.S.C.§ 1639(f)(a) ............................................................................ 7

15 U.S.C. § 1640(a) ............................................................................... 7

15 U.S.C. § 1692a(6) ............................................................................. 5, 6

28 U.S.C. § 1658(a) ............................................................................... 16

28 U.S.C. § 2112(a)(3) ........................................................................... 12

28 U.S.C. § 2342(1) ............................................................................... 11

47 U.S.C. § 227 ..................................................................................... 9, 10

47 U.S.C. § 402(a) ................................................................................. 11

**Other Authorities**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
 18 FCC Rcd. 14014 (2003) ............................................................. 11

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
 23 FCC Rcd. 559 (2008) ................................................................. 11

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
 30 FCC Rcd. 7961 (2015) ............................................................... 11

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
 7 FCC Rcd. 8752 (1992) ................................................................. 11, 13

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
 10 FCC Rcd. 12391 (1995) .............................................................. 13

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
 27 FCC Rcd. 15391 (2012) .............................................................. 11

Defendant, Ocwen Loan Servicing, LLC ("Ocwen"), hereby moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts II (FDCPA), IV (TCPA) and V (TILA)[1] of Taemy and Yong Oh's (the "Ohs") Complaint.[2] In support of its motion, Ocwen states as follows:

## INTRODUCTION

This is the Ohs' second lawsuit against Ocwen, their mortgage loan servicer, and their third litigation with Ocwen.[3] In this case the Ohs assert claims for (i) breach of contract, (ii) violations of the Fair Debt Collection Practices Act ("FDCPA"), (iii) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), (iv) violation of the Telephone Consumer Protection Act ("TCPA"), (v) violations of the Truth in Lending Act ("TILA"), and (vi) intentional infliction of emotional distress. According to the Ohs, the genesis for their claims is Ocwen's improper addition of an escrow account to their mortgage loan account. As alleged, in the Complaint, this escrow addition led to misapplied and improperly rejected mortgage

---

[1] The TCPA and TILA claims are both numbered as Count IV. Because the TILA claim follows the TCPA claim, Ocwen will treat the TILA claim as Count V.

[2] This case is part of the Northern District of Illinois's Mandatory Initial Discovery Pilot program ("MIDP"). The MIDP originally required parties to file answers to complaints even when they filed a Rule 12(b)(6) motion to dismiss or similar motion. However, effective December 1, 2018, the Northern District amended the MIDP so that answers need not be filed while a Rule 12 motion is pending and the MIDP response period is not triggered by a Rule 12 motion. The MIDP does not delineate partial motions to dismiss. Thus, Ocwen relies on the weight of authority that a pending motion to dismiss that addresses some but not all of the claims alleged tolls the time to respond to all claims under Rule 12(a)(4). *See Intercom Ventures, LLC v. FasTV, Inc*., No. 13 C 232, 2013 WL 2357621 at *6 (N.D. Ill. May 28, 2013) (collecting cases and agreeing with the majority that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint); 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1346 (3d ed.). To the extent it is necessary to do so, Ocwen reserves the right move this Court for an extension of time to file its answer to the Complaint to 14 days after the Court's ruling on the counts challenged in this 12(b)(6) motion.

[3] Pleadings from the Ohs' state and federal court actions are part of the public record and can properly be considered by the Court in ruling on Ocwen's motion to dismiss. *Johnson v. City of Kankakee*, 397 Fed. App'x 238, 240 (7th Cir. 2010).

payments, improperly assessed fees and charges, harassing collection calls and letters, and resulted in a wrongful foreclosure action against the Ohs.

While the Ohs present a facially compelling story, a closer review makes clear that several of their claims suffer from fatal defects that support dismissal at the pleading stage:

- The Ohs fail to state a claim under the FDCPA because they fail to plead facts to establish that Ocwen considered their loan to be in default upon acquisition, and thus Ocwen is not a "debt collector."

- Ocwen is the servicer of the loan—not a creditor—and is thus protected from liability under the TILA.

- The Ohs fail to state a claim under the TCPA because they fail to plead any facts to support their conclusion that Ocwen used an Automatic Telephone Dialing System to contact Taemy Oh on her cell phone.

As further detailed below, these issues are dispositive and establish that these Counts should be dismissed on the pleadings.

## ALLEGATIONS IN THE PLEADINGS[4]

The Ohs obtained an adjustable rate mortgage loan on January 17, 2007 from Washington Mutual Bank, FA (WAMU). (Compl., ¶¶ 11, 13.) The Ohs' monthly payments included principal and interest, and they were separately responsible for making bi-annual real estate tax payments and maintaining insurance on the subject property. (*Id.*, ¶¶ 12, 14-15.) The Ohs made every payment on their loan and were contractually current at all times. (*Id.*, ¶¶ 17, 27, 37.) On October 18, 2012, WAMU assigned the servicing rights to the subject loan to Homeward Residential, Inc. ("Homeward"). (*Id.*, ¶ 16.) Subsequently, Homeward "inexplicably opened an escrow account for the subject loan and treated the subject loan as [if] it was in default." (*Id.*, ¶ 20.) However, Homeward discovered its error with respect to the escrow account and closed it. (*Id.*, ¶ 23.) "In April 2013, Ocwen began servicing the subject loan." (*Id.*, ¶ 26.) The Ohs were current on their

---

[4] The Ohs' well-pled factual allegations are accepted as true for purposes of this motion only.

mortgage payments, real estate tax payments and insurance payments when Ocwen began servicing the loan. (*Id.*, ¶¶ 27-29.)

"Shortly after" Ocwen began servicing the loan, it opened an escrow account for the loan and treated the loan as if it were in default because the Ohs' mortgage payments did not include the amount needed to fund the escrow account. (*Id.*, ¶¶ 30, 35.) This resulted in Ocwen either holding the Ohs' monthly mortgage payments in a "suspense account" or returning the payments, which resulted in the assessment of fees on the account. (*Id.*, ¶¶ 36, 38, 39.) In July 2014, Ocwen sent the Ohs correspondence stating they had missed a payment, and Ocwen began placing daily collection calls to Taemy Oh's cellular telephone seeking payment on the loan. (*Id.*, ¶¶ 47-48.)

On July 21, 2014, the Ohs sent Ocwen correspondence disputing the default and addition of an escrow account to the loan and requesting that the escrow be removed. (*Id.*, ¶ 49.) Ocwen responded to this correspondence and indicated that the escrow account could not be removed because the account had a negative balance. (*Id.*, ¶¶ 51-53.) After a series of back and forth correspondence over this issue, the Ohs met with an Ocwen representative in person. (*Id.*, ¶¶ 54-63, 71-75.) Ocwen subsequently sent the Ohs a letter on June 11, 2015 that acknowledged it "incorrectly" added an escrow account on the loan and indicated that the escrow account was "removed on June 2, 2015." (*Id.*, ¶¶ 78-79.) Despite acknowledging that the escrow account was opened in error, Ocwen maintained the loan was in default and referred the account to foreclosure. (*Id.*, ¶¶ 80-83.) The Ohs continued to dispute the default and Ocwen's handling of the loan. (*Id.*, ¶¶ 84-87.) Ocwen filed a foreclosure action against the Ohs on November 4, 2015, and the Ohs retained counsel to defend them in the foreclosure case on November 24, 2015. (*Id.*, ¶¶ 87, 92.) The Ohs continued to receive collection letters and telephone calls from Ocwen throughout this time, despite the Ohs' repeated requests that such communications cease. (*Id.*, ¶¶ 66, 81, 101.) Ocwen voluntarily dismissed its foreclosure case on January 12, 2018. (*Id.*, ¶ 112.)

Ocwen continued to send correspondence to the Ohs that was confusing and indicated Ocwen still considered the loan to be in default and sought to collect fees and costs associated with the default and foreclosure. (*Id.*, ¶¶ 113-114,119-120.)

## LEGAL STANDARD

The Seventh Circuit imposes two hurdles that a plaintiff must clear in order to survive a motion to dismiss under Rule 12(b)(6): "[f]irst, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the…claim is and the grounds upon which it rests;" and "[s]econd, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, this Court should not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the…laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Thus, Rule 12(b)(6) requires dismissal of any claim where the underlying allegations are merely "consistent with" liability, "too vague to provide notice to defendants," or "merely a formulaic recitation of the cause of action and nothing more." *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009); *Iqbal*, 566 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007))).

**ARGUMENT**

**I.    The Ohs fail to state a claim under the FDCPA because they fail to allege facts to support the conclusion that Ocwen is a "debt collector."**

The Ohs allege that Ocwen violated various provisions of the FDCPA in the course of servicing their loan. (Compl., ¶¶ 160-180.) To be liable, Ocwen must meet the FDCPA's definition of a "debt collector." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th Cir. 2009) ("The FDCPA distinguishes between debt collectors, who are subject to the statute's requirements, and creditors, who are not."). The Ohs's own allegations conclusively establish that Ocwen does not meet that definition, and as a result, their claim should be dismissed.

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another….

15 U.S.C. § 1692a(6). The statute specifically excludes from this definition any person attempting to collect a debt "which was not in default when it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii); *Bailey v. Security Nat. Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) ("The plain language of § 1692a(6)(F) tells us that an individual is not a "debt collector" subject to the Act if the debt he seeks to collect was not in default at the time he purchased (or otherwise obtained) it."). Typically, a mortgage servicer like Ocwen is not considered a "debt collector" unless the debt at issue was in default at the time when it was transferred to the servicer. *See Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not."); *Obi v. Chase Home Finance LLC*, No. 11-cv-3993, 2012 WL 1802450, at *2 (N.D. Ill. May 15, 2012) ("Because Plaintiff's loan was not in default when CHF began servicing it, CHF could not be considered a debt collector under

FDCPA."). Thus, to qualify as a debt collector in these circumstances, Ocwen must have acquired the debt *after* it went into default. *See* 15 U.S.C. §1692a(6)(F)(iii). Here, the Ohs specifically allege their loan (debt) was not in default at the time Ocwen acquired servicing rights for the loan, which removes Ocwen from the definition of "debt collector." (Compl., ¶ 27 ("At the time Ocwen began servicing the subject loan, Plaintiffs were *contractually current* on the payments on the subject loan.) (emphasis added).) [5] The Ohs have therefore pled themselves out of any FDCPA claim against Ocwen.

Ocwen anticipates that the Ohs will oppose this motion by arguing that the Seventh Circuit has recognized a limited exception to the general rule, holding that even if the debt is not actually in default, an entity is a debt collector if it treats the debt as being in default at the time of acquisition. *See Schlosser*, 323 F.3d at 539. But if the entity acquiring the debt does not believe the debt is in default *at the time of the acquisition*, that entity is not a debt collector. *Hutchins v. Fairbanks Cap. Corp.*, No. 02 C 2256, 2003 WL 1719997, *5 (N.D. Ill. Mar. 31, 2003). Because the Ohs allege the loan was current when Ocwen began servicing it, they must meet the *Schlosser* exception for Ocwen to be considered a "debt collector" and plead facts that support the contention that when Ocwen obtained the servicing rights to their loan Ocwen believed that the loan was in default. They fail to do so.

Aside from the conclusory allegation that Ocwen "treated the subject loan as in default as soon as [it] acquired the subject loan" (Compl., ¶ 165), the Ohs plead facts that support the opposite conclusion. Specifically, that "*[s]hortly after* Ocwen acquired the subject loan" it "inexplicably opened an escrow account for the subject loan and treated the subject loan as it [if]

---

[5] According to the Complaint, Homeward (the prior servicer) opened an escrow account and treated the loan as in default, but then corrected the error and closed the escrow account prior to the transfer of servicing to Ocwen so the loan was current when servicing transferred from Homeward to Ocwen in April 2016. (*Id.*, ¶¶ 20-27).

was in default." (*Id.*, ¶ 30 (emphasis added).) This sequence of events does not support the conclusion or inference that Ocwen believed the loan was in default *when* it acquired servicing of the loan. This situation contrasts with *Schlosser*, where the ***initial*** communication from the creditor stated "[t]his letter constitutes formal notice of default...." *Schlosser*, 323 F.3d at 535.

Without pleading facts to support the conclusion that Ocwen considered their loan to be default at the time it acquired servicing, the Ohs cannot meet the limited *Schlosser* exception and cannot bring a viable claim under the FDCPA.

## II.   The Ohs' TILA claim fails because Ocwen is a servicer and therefore not subject to liability under TILA.

The Ohs allege that Ocwen violated TILA 15 U.S.C § 1638(f) and § 1639(f)(a) by failing to comply with TILA's implementing Regulation Z, 12 C.F.R. § 1026.41(a)(2), which requires servicers to provide periodic statements to the consumer, and 12 C.F.R. § 1026.36(c)(1)(i), which requires servicers to credit a periodic payment to a consumer's loan provided that payment covers principal, interest and escrow (if applicable) for a given billing cycle. (Compl., ¶¶ 218-219, 224-225.)

But TILA's private cause of action, as set forth in § 1640 (titled "Civil Liability"), limits liability to "any ***creditor*** who fails to comply with any requirement imposed under this part...." 15 U.S.C. § 1640(a). The Ohs summarily assert that Ocwen meets § 1640(a)'s definition of "creditor" "because it regularly extends consumer credit in connection with real estate loans and is the person that payments were payable to." (Compl., ¶ 217.) This conclusory allegation, however, ignores the definition of "creditor" provided in the statute. Instead, TILA defines "creditor" only as a person who both (1) regularly extends consumer credit payable in more than four installments ***and*** (2) "is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness...."*See* 15 U.S.C. §1602(g); *Vincent v. The Money Store*, 736 F.3d 88, 106 (2d Cir. 2013) ("TILA establishes a

straightforward, objective inquiry for determining the identity of the creditor: it is 'the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness'") (*quoting* 15 U.S.C. §1602(g));  *Banks v. Green Tree Servicing, LLC*, Case No. 14–cv–2825, 2015 WL 1058124, at *5 (N.D. Ill. Mar. 5, 2015) ("TILA applies only to a 'creditor,' which is defined in the statute as the person to whom the debt is initially payable.") (*citing* 15 U.S.C. §1602(g)).

Applying this unambiguous definition to this case, Ocwen cannot be held to be a creditor under the statute. Indeed, the Ohs allege that they obtained the subject loan from WAMU in 2007 and that Ocwen began servicing their loan in April 2013. (Compl., ¶¶ 11, 26.) Thus, WAMU was the originator of the loan and the entity to which the debt was initially payable. (*See* Note, attached hereto as ***Exhibit 1***.)[6] Ocwen, as servicer of the loan, is not a creditor under TILA because it is not the originator of the Ohs' loan and is not listed as the payee on the Note. *See Blanton v. Roundpoint Mortgage Servicing Corp.*, No. 15 C 3156, 2016 WL 3653577, at *5 (N.D. Ill. July 7, 2016) (dismissing plaintiff's TILA claim for failure to credit period payments pursuant to 12 C.F.R. § 1026.36(c) "because plaintiff's debt was initially payable to Community Bank of Oak Park and River Forest, Roundpoint cannot satisfy the TILA's statutory definition of a creditor."); *Horton v. Country Mortg. Services, Inc.*, No. 07 C 6530, 2010 WL 55902, at *3 (N.D. Ill. Jan. 4, 2010) ("TILA expressly disclaims any liability for mere servicers unless the servicer is or was the owner of the obligation."). Courts throughout the country are in accordance with the interpretation that servicers are not subject to a private action under TILA for servicing-

---

[6] The Note may be considered part of the pleadings for purposes of this motion because it is referred in the Complaint and is central to the Ohs' claims as it is the basis for their indebtedness. Comp. ¶ 11; *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim.").

related obligations.[7] "Moreover, a servicer is not to be treated as an assignee for purposes of liability under TILA on the basis of an assignment of an obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation." *Horton*, 2010 WL 55902 at *3 (internal quotation omitted).

As a result, the Ohs' TILA claims fail as a matter of law and should be dismissed pursuant to Rule 12(b)(6) because Ocwen does not meet TILA's definition of "creditor," and as a servicer is exempt from liability under TILA.

### III. The Ohs fail to state a claim under the TCPA because they alleges no facts to support their conclusion that Ocwen utilized an ATDS to call them.

The TCPA prohibits calls made to cell phones using "any automatic telephone dialing system or an artificial or pre-recorded voice." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an automatic telephone dialing system (ATDS) as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In *ACA International v FCC*, the D.C. Circuit Court of Appeals vacated, among other things, prior Federal Communications Commission's (FCC) interpretation of what functions a device needed to have to constitute an ATDS, which has cracked open the debate about the meaning and import of the "random or sequential number generator" language in the ATDS definition. 885 F.3d 687 (D.C. Cir. 2018). Significantly, this Court is no longer bound by the FCC's expansive, and decidedly incorrect, interpretation that an ATDS can include predictive dialers that do not have the capacity to

---

[7] *See Shilo v. Ditech Financial LLC*, No. 16-11564, 2017 WL 3202725, at *8 (D. Mass. June 26, 2017) (rejecting plaintiff's claim for violation of 12 C.F.R. § 1026.41(a)(2) for failure to send period statements to the borrower, "[w]hile a servicer of a loan has the obligation to provide certain information to borrowers under the Act, liability for violations of TILA rests squarely and solely with creditors." (citing collecting authority)); *Payne v. Seterus Inc.*, No. 16-0203, 2016 WL 4521659, at *7 (W.D. La. Aug. 26, 2016) (dismissing plaintiff's claim under 12 C.F.R. § 1026.36(c)(1) for failure to credit periodic payments, "courts uniformly have held that there is no servicer liability under TILA, and, by extension, the regulations promulgated thereunder." (*citing Lucien v. Fed. Nat. Mortgage Ass'n*, 21 F. Supp. 3d 1379, 1383 (S.D. Fla. 2014)).

generate and dial random or sequential numbers. The Court is free to independently interpret this statutory language.

Notably, since *ACA International*, courts in this jurisdiction have uniformly concluded that an ATDS must have the capacity to generate telephone phone numbers, either randomly or sequentially, and then to dial those numbers. *See Pinkus v. Sirius XM Radio, Inc.* 319 F. Supp. 3d 927, 932 (N.D. Ill. 2018); *Johnson v. Yahoo!, Inc.,* No. 14 CV 2028, 2018 WL 6426677, at *2 (N.D. Ill. Nov. 29, 2018). This interpretation is supported by the plain language of the statute, the FCC's last valid word on the issue, and it also makes intuitive sense. Accordingly, this Court should follow Judge Feinerman's and Judge Shah's well-reasoned conclusions in *Pinkus* and *Johnson*, respectively, that the TCPA restricts random and sequential dialing, not predictive dialing. *Id.*

Here, after having conducted extensive discovery into Ocwen's telephonic equipment in the prior litigation, the Ohs plead only that "based on the pause and lack of prompt human response during the phone calls which Plaintiffs answered" Ocwen used an ATDS to place calls to Taemy Oh's cellular phone. (Compl., ¶¶ 207-209.) The TCPA, however, does not restrict devices that merely have the capacity to perform the distinct function of "predictive dialing" from a provided list of numbers of the caller's customers, which is all that the Ohs have pleaded. Because the Complaint does not allege any facts suggesting that the dialing equipment Ocwen used to call the Ohs could automatically generate and dial random or sequential numbers—the only statutorily relevant function, it fails to state a claim under the TCPA's ATDS provisions.

### A. FCC's rule making and the impact of *ACA International v. FCC.*

The FCC has authority to promulgate regulations implementing the TCPA. 47 U.S.C. § 227(b)(2); *ACA Int'l*, 885 F.3d at 693. Over the past 25 years, the FCC issued a series of orders

that reflect its evolving interpretation on what devices can be an ATDS.[8] Critically, in 2015 the FCC reaffirmed its prior rulings "that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of 'autodialer'" even if the predictive dialing equipment lacks the capacity to randomly or sequentially generate telephone numbers to be dialed. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2015 Order"), 30 FCC Rcd. 7961, 7972 ¶ 10 (2015). The FCC's significant departure from the plain language of the statute resulted in a number of petitions across the county challenging the FCC's ruling.

*ACA International v FCC* consolidated several Hobbs Act petitions for review of the FCC's 2015 Order before the D.C. Circuit Court of Appeals.[9] *See Pinkus*, 319 F. Supp. 3d 927, 932 (*citing ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.), Dkt. 07/24/2015 (consolidating petitions); *Prof'l Assoc. for Customer Engagement, Inc. v. FCC*, No. 15-2489 (7th Cir.), Dkt. 7 (transferring case); *see also Herrick v. GoDaddy.com LLC*, 312 F.Supp.3d 792, 797 n.5, 2018 WL 2229131, at *5 n.5 (D. Ariz. May 14, 2018) (summarizing the procedural posture)). This court is bound by *ACA Int'l* because the D.C. Circuit Court of Appeals became the sole forum for addressing the validity of the FCC's order once the Judicial Panel on Multidistrict Litigation assigned the

---

[8] The regulations the Commission promulgated in 1992 adopted, without elaboration, the statutory definition of ATDS. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("1992 Order"), 7 FCC Rcd. 8752, 8792 App'x B (1992). In 2003, however, the FCC changed course by promulgating new regulations that expanded the interpretation of an ATDS to include a "predictive dialer," meaning "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 Order"), 18 FCC Rcd. 14014, 14091-93 ¶¶ 131-133 (2003). In 2008, the FCC affirmed the 2003 Order in this respect. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2008 Order"), 23 FCC Rcd. 559, 566 ¶ 12 (2008); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, ¶ 2 n.5 (2012) ("2012 Order").

[9] Under the Hobbs Act, the court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the FCC. 28 U.S.C. § 2342(1); see also 47 U.S.C. § 402(a) (making § 2342(1) applicable to FCC regulations promulgated under the TCPA). Thus, absent a direct appeal, district courts were bound to follow to follow the FCC's orders and rulings. *Blow v. Bijora*, 855 F.3d 793, 802 (7th Cir. 2017).

petitions to the D.C. Circuit under 28 U.S.C. § 2112(a)(3). *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010) (observing that granting the court of appeals exclusive jurisdiction to review FCC rules "serves a number of valid goals: It promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows uniform nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA"); *Pinkus*, 319 F. Supp. at 932.

In *ACA International*, the D.C. Circuit vacated two parts of the FCC's 2015 Order regarding the definition of ATDS. First, it rejected the FCC's expansive interpretation of "capacity," reasoning that it was too broad; if "capacity" includes "features that can be added through software changes or updates," any smartphone would be an ATDS because "any smartphone, with the addition of software, can gain the statutorily enumerated features." *ACA Int'l*, 855 F.3d at 696-98. Second, the court set aside the FCC's interpretation of the necessary functions of an ATDS, explaining that the FCC's interpretation was arbitrary and capricious because it failed to articulate a comprehensible test; on one hand suggesting that "a device qualif[ies] as an ATDS only if it can generate random or sequential numbers to be dialed," and the other that "it [can] so qualify even if it lacks that capacity…." *Id.,* at 702-703.

By holding that the 2015 Order was arbitrary and capricious, the D.C. Circuit necessarily ruled that the prior orders that the 2015 Order reaffirmed, *i.e.*, the related portions of the 2003, 2008 and 2012 Orders, were likewise invalidated because the 2015 Order "reaffirm[s]" those "prior orders." *ACA Int'l*, 885 F.3d at 694, 701 (concluding that "the agency's pertinent pronouncements" were all subject to review); *Pinkus*, 319 F. Supp. 3d at 935 ("It necessarily follows that *ACA International* invalidates not only the 2015 Declaratory Ruling's understanding that all predictive dialers qualify as ATDSs, but also the 2003 Order and 2008 Declaratory Ruling to the extent they express the same understanding."); *Johnson*, 2018 WL 6426677, at *2

("I agree with those courts that have concluded that the FCC's prior orders are no longer binding"); *Thompson-Harbach v. USAA Federal Savings Bank*, No. 15-CV-2098-CJW-KEM, 2019 WL 148711, at *11 (N.D. Iowa Jan. 19, 2019) ("*ACA International* invalidates not only the 2015 Declaratory Ruling's understanding that all predictive dialers qualify as ATDSs, but also the 2003 Order and 2008 Declaratory Ruling to the extent they express the same understanding. Accordingly, the Court is not obligated to conclude that all predictive dialers qualify as ATDSs based on the FCC's prior rulings."). As such, the FCC's last valid word about the functions of an ATDS are its 1992 and 1995 Orders, which were never reversed or vacated and interpret the TCPA in accordance with its plain meaning. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, ¶ 47 (1992); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, ¶ 19 (1995) (device qualifies as an ATDS only if it calls "randomly or sequentially generated numbers").

*ACA International* did not fully resolve the question of what qualifies as an ATDS, but it did resolve some important issues central to answering that question—namely that the FCC's definition of an ATDS is untenable to the extent it includes systems that cannot be programmed to dial random or sequential numbers, as is the case with some predictive dialers. *ACA Int'l*, 885 F.3d at 702; *Pinkus*, 319 F. Supp. 3d at 936 ("the D.C. Circuit having invalidated the FCC's ruling that the statutory term ATDS includes all predictive dialers…..").[10] This guidance from the

---

[10] *See also Marshall v. CBE Group, Inc*., No.: 2:16–cv–02406–GMN–NJK, 2018 WL 1567852, *7 (D. Nev. Mar. 30, 2018) ("The D.C. Circuit rejected [the Commission's] interpretation of the TCPA, particularly as that definition pertained to systems that may not, in fact, have the capacity to dial randomly or sequentially."); *Fleming v. Associated Credit Services, Inc*., Civ. No. 16-3382 (KM) (MAH), 2018 WL 4562460, at *9 (D.N.J. Sept. 1, 2018) ("*ACA International* necessarily invalidated the 2003 Order and 2008 Declaratory Ruling insofar as they provide, as did the 2015 Declaratory Ruling, that a predictive dialer qualifies as an ATDS even if it does not have the capacity to generate phone numbers randomly or sequentially and then to dial them."); *Thompson-Harbach*, 2019 WL 148711 at *9.

D.C. Circuit is binding and not simply persuasive authority. *Id.*; *Keyes v. Ocwen*, 335 F. Supp. 3d 951, 961 (E.D. Mich. 2018) ("*ACA International* is binding on this Court in so far as it vacated the Commission's interpretations regarding the capacity and functions of an autodialer."). Thus, this Court is no longer obligated to, and should not, conclude that all predictive dialers—regardless of whether they have the capacity to generate and then dial random or sequential numbers—qualify as ATDSs. *Id.*

### B. The TCPA restricts dialing of randomly and sequentially generated numbers, not predictive dialing.

In *Pinkus*, Judge Feinerman addressed the extent to which predictive dialers can qualify as ATDSs head on. 319 F. Supp. 3d 927, 936. After extensive analysis, Judge Feinerman concluded that an ATDS "must have the capacity to ***generate*** telephone phone numbers, either randomly or sequentially, and then to dial those numbers" *Id.* at 938 (emphasis added). In *Dominguez v. Yahoo, Inc.*, the Third Circuit likewise held that "'random or sequential' number generation...refers to the numbers themselves rather than the manner in which they are dialed". 629 Fed. App'x 369, 372 (3d Cir. 2015); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (equipment qualifies as an ATDS only if it has the capacity to "function...by generating random or sequential telephone numbers and dialing those numbers."). Put otherwise, a predictive dialing device that calls telephone numbers from a stored list of numbers—rather than having generated those numbers either randomly or sequentially—does not satisfy the statutory definition of ATDS. *Id.*; *Pinkus*, at 938; *Johnson*, 2018 WL 6426677 at *2 ("The phrase 'using a random or sequential number generator' applies to the numbers to be called and an ATDS must either store or produce those numbers (and then dial them). Curated lists developed without random or sequential number generation capacity fall outside the statute's scope."); *Keyes*, 335 F. Supp. 3d at 962 (concluding that dialing from a set list is insufficient and that "devices must be able to generate random or sequential numbers to be dialed to qualify as an ATDS.");

*Thompson-Harbach*, 2019 WL 148711 at *13 ("the phrase 'using a random or sequential number generator' necessarily conveys that an ATDS must have the capacity to generate or store telephone numbers, either randomly or sequentially, and then to dial those numbers.").

### C.   The Ohs failed to plead any facts establishing that Ocwen's dialer had the present capacity to generate random or sequential numbers.

The Ohs assert that Ocwen called Taemy Oh's cellular phone no less than 600 times and that because of a "pause and lack of prompt human response during the phone calls which Plaintiffs answered" it used an ATDS to place those calls. (Compl., ¶¶ 207, 209.) They also allege, upon information and belief, that "the ATDS employed by Ocwen transfers the call to a live agent once the human voice is detected, thus resulting in a pause after the called party speaks into the phone." (*Id.*, ¶ 208.) These paltry allegations are the sum total of details provided about Ocwen's telephone equipment. There is no mention of random or sequential number generating capacity anywhere in the Complaint.

The Ohs' allegations have no connection to random or sequential number generation and dialing. Indeed, a "pause does not create a plausible inference regarding the capacity...to make random calls." *Smith v. Aitima Medical Equipment, Inc*., No. ED CV 16-00339-AB (DTBx), 2016 WL 4618780, at *6 (C.D. Cal. Jul. 29, 2016). Instead of alleging facts suggesting random or sequential number generation and dialing, the Complaint alleges facts suggesting predictive dialing. The allegation that there was a "pause" and "lack of prompt human response" are supposedly a "distinctive" sign of "a predictive dialer". *Toney v. Quality Resources, Inc*., 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014)). Moreover, the Ohs admit that Ocwen is in the business of servicing borrowers' mortgage loans and contacts borrowers for the purpose of collecting debts. (Compl., ¶ 9.) A device that can randomly or sequentially generate and dial numbers is useless to Ocwen because its objective is to connect with its actual customers. Likewise, the alleged volume of calls that Ocwen made to the Ohs (no less than 500 or 600) virtually eliminates the

possibility that Ocwen was dialing random or sequential numbers rather than specifically calling its customers.

As set forth above, the TCPA restricts only random and sequential number generators and dialers; it does not prohibit predictive dialers. Allegations that only suggest the use of predictive dialing technology do not plausibly suggest the use of an ATDS. Given that the Ohs have already had the benefit of discovery into Ocwen's telephonic systems and are inevitably familiar with the *ACA International* decision, if they could have pleaded the use of random or sequential number generation and dialing they would have, but they cannot. *See e.g. Keyes*, 335 F. Supp. 3d 951, 961 ("Ocwen has demonstrated as a matter of law that the Aspect System which it used to call Keyes requires more than a flip of the switch to qualify as an autodialer. Indeed, to modify the Aspect System, Ocwen would need to alter the system's source code, and it does not have access to that code."). The Ohs failed to meet the basic pleading burden required of TCPA plaintiffs, and their TCPA claim should be dismissed with prejudice as a result.

## IV. The statute of limitations bars the Ohs' TCPA claim in part.

A statute of limitations defense "may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (*quoting United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). The TCPA statute of limitations is four years. 28 U.S.C. § 1658(a). That means claims based on calls that predate October 29, 2014 (four years preceding the date of this Complaint) should be dismissed as outside of the limitations period. The Ohs allege that Ocwen made "no less than 600 non-emergency calls" to them from "July 2014 to March 25, 2016." (Compl., ¶ 209.) All the calls from July to October, 28, 2014 should be disregarded and cannot form the basis of a TCPA claim.

**CONCLUSION**

For the reasons set forth above, Ocwen Loan Servicing, LLC respectfully requests that this Court dismiss the Ohs' FDCPA, TILA and TCPA claims against it with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED: January 14, 2019             Respectfully submitted,

                                        OCWEN LOAN SERVICING, INC.

                                        By:     /s/ Irina Dashevsky

Simon Fleischman (6274929)
*sfleischmann@lockelord.com*
Irina Dashevsky (6298331)
*irina.dashevsky@lockelord.com*
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312-443-0700

CERTIFICATE OF SERVICE

I, Irina Dashevsky an attorney, certify that I caused the foregoing to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on January 14, 2019.

/s/ Irina Dashevsky