```
                 IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION


TAEMY OH and YONG K. OH,                ) No. 18 C 7214
                                        )
                Plaintiffs,             )
                                        )
        v.                              )
                                        )
OCWEN LOAN SERVICING, LLC,              ) July 30, 2019
                                        ) Chicago, Illinois
                                        ) 8:50 a.m
                Defendants.             ) Motion Hearing

                   TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE SHARON JOHNSON COLEMAN


APPEARANCES:

For the Plaintiffs:       SULAIMAN LAW GROUP, LTD.
                          2500 S. Highland Avenue
                          Suite 200
                          Lombard, Illinois  60148
                          BY:  MR. MOHAMMED O. BADWAN


For the Defendant:        LOCKE LORD LLP
                          111 South Wacker Drive
                          Chicago, Illinois  60606
                          BY:  MS. IRINA DASHEVSKY
```

TRACEY DANA McCULLOUGH, CSR, RPR
Official Court Reporter
219 South Dearborn Street
Room 1232
Chicago, Illinois  60604
(312) 435-5570

1   THE CLERK: 18 CV 7214, Oh versus Ocwen Loan
2 Servicing.
3   THE COURT: Plaintiff, defendants.
4   MR. BADWAN: Good morning, Your Honor. Mohammed
5 Badwan on behalf of the plaintiffs.
6   MS. DASHEVSKY: Irina Dashevsky on behalf of Ocwen
7 Loan Servicing.
8   THE COURT: All right. And so there was a motion to
9 stay while the Seventh Circuit did its work. What's happened?
10   MR. BADWAN: Your Honor, this is a joint motion for
11 clarification. You did stay the ruling on the motion to
12 dismiss. Now, what we weren't sure about was whether the case
13 is stayed with respect to discovery. Ocwen, as is set forth in
14 the, in the motion believes that it should be stayed because
15 they don't know which count is going to be at issue. Obviously
16 plaintiffs believe that any stay of discovery would be highly
17 prejudicial given the ages of the plaintiffs of 77 and 76 -- 79
18 and 76, with Mrs. Oh having documented health issues.
19   Furthermore, the Ohs have been entangled with this --
20 in this dispute with Ocwen since 2015. And the dispute's over
21 a first mortgage on their primary residence. We believe that
22 any stay would be highly prejudicial --
23   THE COURT: And, Counsel, didn't you -- also you
24 wanted the supplemental authority? I mean, you want it, is
25 that correct?

1  MR. BADWAN: The supplemental authority with respect
2  to the TCPA claim, which is only one out of the six claims. So
3  we believe staying discovery because of unsettled law on one
4  out of the six claims is just not warranted under the
5  circumstances.
6  THE COURT: All right.
7  MS. DASHEVSKY: Your Honor, as counsel mentioned, we
8  take a different position for a few reasons. First, we've
9  actually exchanged a significant amount of documents already.
10 So what's really left substantively is policies and procedures
11 and technical information regarding the, the phone system that
12 Ocwen used. So if that count's in play, yes, we'll have an
13 entire different huge batch of discovery we'll need to get
14 into.
15 THE COURT: That one count?
16 MS. DASHEVSKY: Correct. But three counts are at
17 issue in our motion to dismiss, the TILA count and the FDCPA
18 count. And again, policies and procedures with respect to the
19 FDCPA would come into play too if those counts survive. So
20 the, the case significantly changes based on these three
21 counts, because the bulk of discovery that we would be engaging
22 in that's left would be with respect to these counts.
23 THE COURT: And you believe that as far as the first
24 count, the issue that's before the Seventh Circuit, you all
25 should wait too, is that correct?

1  MS. DASHEVSKY: Your Honor, I didn't object to
2 counsel's motion. I objected to piecemeal rulings. And Your
3 Honor granted the stay with respect to the motion to dismiss in
4 its entirety pending the Seventh Circuit's decision. So what
5 we're asking for here is two-fold. There's a September 6th
6 fact discovery cutoff day, which we're hoping to just be
7 stricken and reset after we get a decision on the motion to
8 dismiss. And otherwise we would like to stay discovery for
9 efficiency reasons, but at a minimum I don't think -- I think
10 it's highly prejudicial for us to have to engage in discovery
11 on the three counts that are at issue on the motion to dismiss.
12  THE COURT: The Court understands. The Court also
13 understands, as do you, when you have elderly clients and one
14 with health issues, there's an issue there. But this all gets
15 rolling because both sides wanted to wait -- for this Court to
16 wait to even -- to rule on this matter until after the Seventh
17 Circuit, which we can't control. Even though they're much
18 faster than they used to be, we're waiting for them.
19  In the meantime, talk about efficiency, I've got a
20 motion to dismiss hanging out there, and it's been hanging out
21 there for a lot of months. And when it hangs out there like
22 that, and then you're asking me to strike status dates -- I
23 mean, strike discovery, keep staying discovery, yet I still
24 have this motion hanging on my call doing nothing while it's
25 waiting for the Seventh Circuit. So first off, you all have a

1 lot of asks. I have one too, that the motion to dismiss be
2 withdrawn without prejudice. It can be put back on when you
3 get the order, and it can -- you can tweak it if you want. You
4 can adjust it if you want.
5     But for the Court to have this standing on my call,
6 it really is prejudicial. I have a thing called Biden. Any
7 motions that are pending on my call for more than six months --
8 and this is not due to my delay. This is due to you all
9 wanting to wait, and I granted your motion. And so this is not
10 unusual. I see counsel frowning up. But this is not an
11 unusual request in this district when something's been pending
12 and there's no action, and we don't know when it's going to
13 happen.
14     I would vacate the discovery deadline. That would
15 make sense. But that doesn't mean vacating the deadline of the
16 19th. You have a lot of work to do. That's why I would vacate
17 it. Not because you can't continue to work on at least some of
18 these counts with elderly people. And so I want to be ready
19 when the Seventh Circuit comes down with its, its decision to
20 not only give you all a brief time to adjust if you need to
21 adjust your motion or your response, which my guess is would be
22 happening anyway.
23     So if you withdraw without prejudice, as soon as you
24 want you come back with any advice and any -- we'll have a
25 status as soon as it comes, it comes down. Then you can tell

1 me, Judge, we wish to either, you know, renew our motion. You
2 wish to do something else. We wish to have 14 days to adjust
3 what we have already stated with what came out in the Court's
4 order. And you would -- it would be an extremely tight
5 briefing schedule. And then the Court would have it on the
6 front burner to rule on, because I've had the other, and it
7 doesn't mean that I haven't looked at it. We've just been
8 waiting and in a holding pattern. But that would be the
9 Court's suggestion.
10 Again, we would redo discovery. Set that all up
11 piecemeal. The Court understands. One of the reasons the
12 Court ruled on the way I did is because I'm not a fan of
13 piecemeal. On the other hand, when you have multiple counts,
14 as counsel does here, the Court would like to get some of it
15 moving when it hasn't done much in the last, what is it, at
16 least what, nine months maybe that we've been sort of waiting
17 to get -- you know, after getting the supplemental authority,
18 which was not objected to, after everybody figuring out the
19 Seventh Circuit had it. They wanted to get a ruling. We have
20 the rulings by some of my colleagues.
21 So, you know, there's a lot going on here. A lot of
22 it is out of our control, meaning the Court and the parties.
23 We're waiting on everybody else. So it just would seem fair
24 that the Court vacate any discovery. Okay.
25 MR. BADWAN: Now, with the order vacating discovery,

1  so discovery is -- we're free with proceed with discovery?
2          THE COURT:  Vacating and staying are two different
3  things.
4          MR. BADWAN:  I just want to make sure we're clear.
5  So on all counts we can --
6          THE COURT:  But even then you're working -- there's
7  not a deadline.
8          MR. BADWAN:  Right.
9          THE COURT:  So I don't expect motions to compel to
10 come in here.  I just expect you to keep talking, going ahead
11 as feasible with things that you might not be duplicating or
12 might not be extremely expensive for you to turn over, or to
13 talk about.  I expect discovery to continue, but it won't be at
14 the aggressive pace it might be otherwise because there's no
15 deadlines or anything.
16         MR. BADWAN:  Thankfully, Your Honor, me and opposing
17 counsel have a good working relationship.  I don't anticipate
18 any --
19         THE COURT:  Okay.  That's, that's what I'm saying.
20 No deadlines, which would mean no motions to compel because
21 there would be no deadlines.  However, I do expect it to at
22 least continue where it is prudent and where it is not cost
23 ineffective.  Okay.  So if that makes any sense.  Your turn,
24 Counsel.
25         MS. DASHEVSKY:  It does make some sense, Your Honor.

1  I just want to clarify.  The counts that are at issue in the
2  motion to dismiss, again, my position is we shouldn't have to
3  incur the costs and burden of dealing with that discovery until
4  we know how the motion plays out.
5          THE COURT:  Well, if this was a true MIDP case where
6  we'd be following all the rules, it's rare that MIDP stays
7  discovery even when there's a motion to dismiss.  And so this
8  Court has taken its foot off the pedal to some extent.  Not
9  worrying about, you know, the motions.  And the motions to
10 dismiss go right ahead with discovery the way MIDP was formed.
11 So the question is now I've slowed it down, but you seem --
12 any, any amount of time is basically what you're telling me is
13 a burden, is that correct?
14         MS. DASHEVSKY:  I, I -- because we --
15         THE COURT:  And the Court would disagree with that.
16         MS. DASHEVSKY:  I, I completely understand what the
17 Court is saying.  My position is because we've engaged in the
18 MIDP schedule and we've exchanged those initial responses and
19 made substantial document productions on both ends, that really
20 what's left is now other than depositions with respect to
21 documents, is now getting into the specifics of the counts that
22 are at issue in the motion.  And so --
23         THE COURT:  Stop right there.  I want to get your
24 response to that, because you made that clear before.
25         MR. BADWAN:  Your Honor, all these claims are really

1  intertwined, right. So if we want to take discovery on let's
2  say the TCPA count, they have those cases -- the documents
3  ready and available and their witnesses ready and available.
4  Ocwen is a huge mortgage servicer. This case has a history.
5  They've produced a witness for these. We don't think any
6  limitation in discovery is warranted. Courts see motions to
7  dismiss all the time and let discovery proceed, as you did
8  here.
9           You know, in one breath she wants to say we don't
10 want to piecemeal stuff. But now, well -- now, the Court has
11 let discovery go, they want to piecemeal it. They can't have
12 their cake and eat it too in my opinion.
13          THE COURT: All right. Stop. Response.
14          MS. DASHEVSKY: I mean, by the same token they want a
15 stay, but they don't want a stay, right. We would have been
16 happy to have a ruling on our motion to dismiss so we would
17 know which counts are at issue. That's not really my point.
18 As counsel mentioned, this case has a history, and that history
19 was a year's long TCPA litigation that was voluntarily
20 dismissed by plaintiffs. And then they refiled this case.
21          And part of the issue here is counsel is saying,
22 well, it's not prejudicial, it's not burdensome to Ocwen. We
23 already went through all of this, and I'm trying to figure out
24 do I need to reinvent the wheel, or is everything that was done
25 before effectively not going to be in play because the TCPA

1   count may not survive.  In which case this would be an entirely
2   new litigation.  So it's, it's a little bit more complicated
3   than counsel is making it out to be, that I can just press
4   buttons and give him, you know, all the stuff.  But really, as
5   I understand it, and the discovery would be focused on the
6   counts now that are subject to the motion.
7              THE COURT:  Counsel, as to that last point.
8              MR. BADWAN:  Well, so I know --
9              THE COURT:  The discovery, the discovery that you're
10  seeking to continue with at a normal pace is discovery that
11  would be as to counts that are at issue on the motion to
12  dismiss, which I'm assuming Ocwen thinks they have a good
13  chance of prevailing on, and they don't want to do it.
14             MR. BADWAN:  Those claims would only require
15  documents, because we're going to get one shot at the 30 (b) 6
16  witness to cover all claims.
17             THE COURT:  All right.  So those are basically you're
18  saying complete?
19             MR. BADWAN:  No.  We don't -- we have the servicing
20  records and the communication history between the borrowers and
21  the mortgage company.  What we don't have are stuff like
22  policies and procedures.  And I'm willing to wait on that
23  because that more goes to willfulness and the consumer fraud
24  claim.
25             THE COURT:  With the policy and procedures, Counsel,

1  how much do you have to do for paperwork on policy and
2  procedures?  As he said, you're a big company.  I'm sure you've
3  got booklets and documents that can easily be turned over
4  without a lot of effort or expense.
5              MS. DASHEVSKY:  Surprisingly quite a bit,
6  particularly with respect to the Aspect system, because it's
7  drilling down on what technologies and what was in play during
8  a period of time, right.  It is, it is as, as simple as turning
9  over documents, and it's as complicated as figuring out which
10 documents to turn over.  And then, you know, making sure that
11 we understand -- running analyses and figuring out how many
12 calls were made, how those calls were made, which system made
13 those calls.  Was there -- you know, going through an analysis
14 and finding out at which point was the potentially consent
15 given, not given.  Listening to hundreds of call recordings in
16 order to be able to answer some of the discovery and questions
17 that counsel has propounded.
18             THE COURT:  All right.  Counsel.
19             MR. BADWAN:  You know, I'll address the Aspect
20 system.  We can send a third party subpoena to Aspect.  I know
21 their national counsel.  He'll send it over to me in two weeks.
22 That will take the burden away from them if that's their
23 concern.  I'm really not seeking much here.  All I want from --
24 to proceed is them to answer interrogatories, answer the
25 requests for production.  That's it.  And then at that point

1  there's the third party witnesses here.  There's no reason why
2  we shouldn't proceed with those.  These are fact witnesses that
3  have nothing to do with the phone calls.
4          THE COURT:  Okay.  Now, that I do want to know.  The
5  Court gets it to some extent if you're talking about listening
6  to phone calls and, and going through some documents.  But
7  again, the MIDP is not just the front and the disclosures.  It
8  is two track litigation.  One, if you're doing motion practice,
9  and the other one you keep on doing discovery.  And so, you
10 know, the MIDP rulings don't end at, oh, we disclose.  We're
11 done.  That's not all of it.
12         But if counsel says that there's a third party
13 subpoena he has no problem sending out to take one part of this
14 off your plate and just go ahead and get the information he
15 needs, then that should be agreeable, and counsel should go
16 ahead and follow up on that.  As to interrogatories, you're not
17 telling me -- the Court just does not see why answering
18 interrogatories is going to be so overly burdensome and
19 expensive.  And you don't know if you're going to be successful
20 on those counts or not.  And it would be good to at least get
21 that out of the way without having to start like we're starting
22 from the beginning of the case as soon as the ruling comes
23 down.
24         All right.  So the Court is going to order that the
25 interrogatories get done, and those can get done by that

1  September date that was set I think.
2              MR. BADWAN:  Okay.  So interrogatories --
3              THE COURT:  The previous date.
4              MR. BADWAN:  So --
5              THE COURT:  On September, what was it?  The 6th.  So
6  that's 30 days.
7              MR. BADWAN:  And the requests for production too,
8  Your Honor?
9              THE COURT:  No.  Right now we'll do interrogatories.
10 Let's see where we are.
11             MR. BADWAN:  I had to test my luck.
12             THE COURT:  All right.  All right.  So we're going to
13 do that.  See where we are.  And then are the parties going to
14 agree that the briefings on the motion to dismiss, to dismiss
15 are going to be withdrawn without prejudice and can be refiled
16 with amendments once the decision comes out?
17             MS. DASHEVSKY:  Okay.  And we're still set for a
18 status --
19             MR. BADWAN:  You're asking if we agree or --
20             THE COURT:  I'm asking you do you agree?
21             MR. BADWAN:  Absolutely.  I think that makes the most
22 sense.
23             THE COURT:  All right.
24             MS. DASHEVSKY:  That's fine, Your Honor.
25             THE COURT:  All right.  And so and then what else did

1  you need, Counsel?
2           MS. DASHEVSKY:  Oh, I was just making sure.  I think
3  we had a status in October that was set and --
4           THE COURT:  Oh, the October date we're going to keep.
5           MS. DASHEVSKY:  Yes.
6           THE COURT:  Yes.
7           MS. DASHEVSKY:  And if, if -- I doubt this will
8  happen.  But if by chance there's a Seventh Circuit --
9           THE COURT:  When was the briefing complete?
10          MR. BADWAN:  It was just complete, Your Honor.
11          THE COURT:  Oh, it was just completed.  Yes, we've
12 got a while to go.
13          MS. DASHEVSKY:  Okay.
14          THE COURT:  So let's keep the October date.  And
15 again, you can do, I would -- what do you call it, relaxed
16 discovery with no deadlines other than the one I've set.  You
17 come in in October.  You see where we are.  There's a good
18 chance, put you on notice that the production of documents if
19 we're really specific about you got your third party subpoena
20 answered, we may be somewhere else down the road where we can
21 make a little more progress.  I do understand if it is a lot of
22 documents.  We may have -- do we have E discovery involved in
23 this also or no?  Not really?
24          MS. DASHEVSKY:  I don't think really.  I think it's
25 something we'll have to get into.  I don't really see how it

1  would be at issue.
2          THE COURT:  Well, you all be prepared to tell me --
3          MS. DASHEVSKY:  Okay.
4          THE COURT:  -- where we can go to at least keep this,
5  again, dual track.
6          MS. DASHEVSKY:  Okay.
7          THE COURT:  All right.
8          MR. BADWAN:  One last thing.  Given that since
9  they're not going to produce all the documents, so that means
10 we can't take their 30 (b) 6, can the Court put something in
11 the order saying the parties should focus on completing
12 nonparty depositions?  That way when the Seventh Circuit rules
13 on, all we've got to do is hammer out their 30 (b) 6 and we're
14 ready to go to summary judgment and then the trial date.
15         THE COURT:  Well, you can at least discuss it and
16 maybe even schedule them out.  I'm not going to be requiring
17 that they are done.  All right.  So you all go through it.
18 Again, if you all are cordial and working civilly together, you
19 should be able to find a few witnesses that you can take and
20 get out of the way that really it's not going to be any real
21 expense on either party.  Okay.
22         MS. DASHEVSKY:  Thank you, Your Honor.
23         THE COURT:  All right.  And October what is the date,
24 Yvette?
25         THE CLERK:  October 7th at 9:00 a.m.

1    THE COURT: All right. I'll see you October 7th.
2 Thank you.
3    MR. BADWAN: Thank you so much, Your Honor.
4             CERTIFICATE
5    I HEREBY CERTIFY that the foregoing is a true,
6 correct and complete transcript of the proceedings had at the
7 hearing of the aforementioned cause on the day and date hereof.
8
9 _/s/TRACEY D. McCULLOUGH_                              _August 6, 2019_
10 Official Court Reporter                                      Date
   United States District Court
11 Northern District of Illinois
   Eastern Division