IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Taemy Oh et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 18-cv-07214 |
| ) | |
| Ocwen Loan Servicing, LLC, ) | Judge Sharon Johnson Coleman |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Taemy Oh and Yong K. Oh (the "Ohs") bring this action against Ocwen Loan Servicing, LLC ("Ocwen") for breach of contract (Count I), violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (Count II), violations of the Illinois Consumer Fraud and Deceptive Practices Act ("IFCA"), 815 ILCS 505/1 et seq. (Count III), violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count IV), violations of the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1638 and 1639 (Count V)[1], and intentional infliction of emotional distress (Count VI). Currently before the Court is defendant's motion to dismiss plaintiffs' Counts II and V pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, defendant's motion to dismiss Counts II and V [53] is granted.

**Background**

The following allegations are taken as true for the purpose of ruling on this motion. On January 17, 2007, the Ohs executed a mortgage loan with Washington Mutual Bank, FA ("WAMU"), which was secured by plaintiffs' home (the "Mortgage Loan"). Under the terms of the Mortgage

---

[1] The TCPA and TILA claims are both numbered as Count IV in the Complaint. Because the TILA claim comes after the TCPA claim, the Court will treat the TILA claim as Count V and the intentional infliction of emotional distress claim as Count VI.

Loan agreement, the Ohs were required to make the real estate tax payments to Will County and to maintain property insurance.

On October 18, 2012, the Mortgage Loan was assigned to Homeward Residential, Inc. ("Homeward"). The Ohs assert that Ocwen became the owners of the Mortgage Loan when it acquired Homeward in late 2012. Ocwen began servicing the Mortgage Loan in April 2013. The Ohs made all payments that became due under the terms of the Mortgage Loan from April 2013 through the filing of the Complaint. The Ohs allege that Ocwen "treated the subject loan as in default as soon as they acquired the subject loan," (*id.* at ¶ 165), and "[s]hortly after … opened an escrow account for the subject loan[.]" (*Id.* at ¶ 30). Ocwen presumably opened the escrow account "to hold and fund money for the real estate taxes and insurance for the subject property." (*Id.* at ¶ 31). As a result of Ocwen opening the escrow account, the Ohs' monthly mortgage payments increased by approximately $700. The Ohs continued to make their monthly payments of about $1,599.03, which covered the principal and interest as required pursuant to the terms of the Mortgage Loan. The Ohs, however, declined to make the additional payments to fund the escrow account because they believed that Ocwen had no legal right to charge them. Consequently, Ocwen "deemed the subject loan in default because Plaintiffs' mortgage payments did not include the amount needed to fund the escrow account." (*Id.* at ¶ 35). Ocwen also declined to accept the Ohs' monthly mortgage payments and instead returned or held the payments in a suspense account until there were sufficient funds to cover the Ohs' monthly payment plus the additional charge for the escrow account. Ocwen also assessed other fees against the Ohs, including late fees and inspection fees, which increased the alleged default amount of the loan.

On May 13, 2014, unbeknownst to the Ohs, Ocwen made a payment for the first installment of the 2013 real estate taxes to Will County weeks ahead of the due date. On May 30, 2014, while making a payment for the first installment of the 2013 real estate taxes, a Will County employee

informed Yong that Ocwen had already made a payment for the 2013 real estate taxes. Yong explained to the representative that there was no escrow on the Mortgage Loan and that Ocwen should not have tendered the payment. Yong then made the payment for the first installment of the 2013 real estate taxes in the amount of $5,111.75 to Will County and directed that a refund be issued to Ocwen.

In July 2014, Ocwen sent the Ohs correspondence informing the Ohs that they missed a payment. On July 21, 2014, the Ohs sent Ocwen a written response disputing that the Mortgage Loan was in default and requesting that Ocwen close the escrow account. On July 28, 2014, Ocwen responded to the Ohs acknowledging receipt of the disputed payment and informing the Ohs that the payment was applied to the outstanding balance of a preceding month because the loan was in default. Ocwen further explained that it could not close the escrow account because there was a negative balance. On August 6, 2014, the Ohs responded to Ocwen disputing the default status of the Mortgage Loan and explaining that the escrow account should be closed because it was erroneously opened. On August 15, 2014, Ocwen made a payment to Will County for the second installment of the 2013 real estate taxes and once again did not inform the Ohs. On August 29, 2014, the Ohs made a payment for the second installment of the real estate taxes in the amount of $5,111.75 to Will County.

Subsequently, Will County issued a refund to Ocwen due to the double payments received for the first installment of the 2013 real estate taxes. Notwithstanding receiving the refund, Ocwen failed to appropriately credit the Mortgage Loan account and continued issuing correspondence to the Ohs asserting that the loan was in default and threatening foreclosure. On October 10, 2014, Ocwen responded to the Ohs' August 6, 2015 letter explaining that the refund that Ocwen received from Will County was applied to the escrow account and that Ocwen could not close the escrow account because there was a negative balance of $4,999.18.

On March 19, 2015, Will County issued a refund to Ocwen for its payment of the second installment of the 2013 real estate taxes in the amount of $5,111.75. On May 16, 2015, the Ohs met with an Ocwen employee and discussed the issues they were having with the Mortgage Loan. On June 11, 2015, Ocwen sent a letter to the Ohs acknowledging that Ocwen erroneously opened the escrow account and explaining that the escrow account was removed on June 2, 2015. The letter further stated that Ocwen had not yet received a tax refund from Will County and that it could not adjust the Mortgage Loan account until it received a refund. Thereafter, the Ohs and Ocwen continued to dispute whether the Mortgage Loan was in default. On November 4, 2015, Ocwen initiated a foreclosure proceeding against the Ohs. On January 12, 2018, Ocwen voluntarily dismissed the foreclosure case. Following the dismissal, Ocwen continued to reject the Ohs' payments alleging that the payments were insufficient to cover the defaulted amount of the Mortgage Loan. Around this time, Ocwen stopped sending the Ohs monthly mortgage statements. The Ohs, however, continued to make their payments as required by the terms of the Mortgage Loan.

The Complaint contains six counts. Count I for breach of contract; Count II for violations of the FDCPA, 15 U.S.C. § 1692 (Count II); Count III for violations of the IFCA, 815 ILCS 505/1 et seq.; Count IV for violations of the TCPA, 47 U.S.C. § 227; Count V for violations of the TILA, 15 U.S.C. §§ 1638 and 1639; and Count VI for intentional infliction of emotional distress. Defendants move to dismiss Counts II and V.

**Legal Standard**

When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The Court may consider "information that is properly subject to judicial notice" when ruling on a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court may also consider information in the public record. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012).

**Discussion**

**1. FDCPA Claim**

The Ohs allege that Ocwen violated several sections of the FDCPA. Ocwen responds that the Ohs fail to state a claim under the FDCPA because the Ohs have not alleged any facts to support their assertion that Ocwen is a "debt collector." Under the FDCPA, the term "debt collector" is defined as "any person who … regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another[.]" *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (citing 15 U.S.C. § 1692a(6)). This definition does not include "debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F); *see also Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) ("The plain language of [the FDCPA] tells us that an individual is not a 'debt collector' subject to the Act if the debt he seeks to collect was not in default at the time he purchased … it.") (citing § 1692a(6)). However, the Seventh Circuit has held that a party acquiring a debt not in default is a "debt collector" if at the time of acquisition it "attempt[s] to collect on [the] debt that it assert[s] to be in default." *Schlosser*, 323 F.3d at 539.

Here, the Ohs argue that Ocwen is a "debt collector" because at the time of acquisition Ocwen treated the Mortgage Loan as if it was in default. (Compl. at ¶¶ 30, 165). To support their position, the Ohs point to the fact that Ocwen opened an escrow account shortly after acquiring the Mortgage Loan and argue that it is "plausible [to infer] that Ocwen imposed the escrow because the loan was in default at the time it acquired it." (Pls.' Resp. at 13-14). The Ohs' argument is unpersuasive because the Complaint includes factual allegations that undermine the Ohs' position. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim.") (citation and internal quotation marks omitted). Specifically, the Ohs allege that the escrow account was opened to hold the money to cover the Ohs' real estate taxes and insurance for the subject property and that Ocwen did not deem the Mortgage Loan to be in default until the Ohs declined to make the additional payments to fund the escrow account. (*See* Compl. at ¶¶ 30-35). This allegation undermines the plausibility of the Ohs' argument. Accordingly, the Ohs have failed to allege facts that would allow the court to plausibly infer that Ocwen was a "debt collector" under the FDCPA.

In the Ohs' response brief, the Ohs also allege that Ocwen is a "debt collector" because Ocwen filed an affidavit in the foreclosure case stating that the Ohs' loan was in default at the time that Ocwen acquired it. (Pls.' Resp. at 14). However, the Ohs failed to include this allegation in the Complaint. It is well established that a plaintiff cannot amend the complaint in a response brief to a motion to dismiss. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (noting "the axiomatic rule that a plaintiff may not amend his complaint in his response brief"). Given that the Ohs failed to make this argument in the Complaint, the Court declines to take judicial notice of the affidavit at this time. Accordingly, the Ohs' FDCPA claim is dismissed without prejudice.

2.  **TILA Claim**

The Ohs next assert that Ocwen violated §1638(f) of TILA and its implementing regulation 12 C.F.R. §1026.41(a)(2) by failing to provide the Ohs periodic statements for each billing cycle. (Compl. ¶ 219). The Ohs also assert that Ocwen violated §1639f(a) of TILA and its implementing regulation C.F.R. §1026.36(c)(1)(i) by failing to credit the Ohs' payments as of the date of receipt. (*Id.* ¶ 225). Ocwen contends that the Ohs' TILA claim fails because Ocwen is not a "creditor" as defined by TILA. Under TILA, a creditor is the "person to whom the debt is initially payable." *Banks v. Green Tree Servicing, LLC*, 14-cv-2825, 2015 WL 1058124, at *5 (N.D. Ill. Mar. 5, 2015) (citing 15 U.S.C. § 1602(g); *Vincent v. Money Store*, 736 F.3d 88, 91 (2d Cir. 2013)). Here, the Mortgage Loan was initially payable to WAMU, not Ocwen. Therefore, Ocwen cannot be a creditor under TILA.

In the Ohs' response brief, the Ohs argue for the first time that Ocwen is subject to assignee liability under TILA. (Pls.' Resp. at 15). As stated earlier, a plaintiff cannot amend the complaint in a response brief to a motion to dismiss. *See Pirelli*, 631 F.3d at 448. Consequently, the additional argument that the Ohs allege is not properly before this Court.

Even if the Ohs properly alleged assignee liability under TILA, Ocwen argues that the Ohs' TILA claim fails because the alleged violations "cannot, as a matter of law, serve as a basis for assignee liability." (Def.'s Reply at 13). Under TILA, Congress limited assignee liability to circumstances where the violation is "apparent on the face of the disclosure statement" and the assignment was voluntary. 15 U.S.C. § 1641(a) & (e). "Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under TILA[.]" *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 695 (7th Cir.1998); *see also Dawoudi v. Nationstar Mortgage LLC*, 448 F. Supp. 3d 918, 928 (N.D. Ill. 2020) (Blakely, J.) (dismissing plaintiff's TILA claim for failure to provide a payoff balance because a payoff balance can only be

7

provided after the origination of a loan, and therefore a failure to provide a payoff balance could not appear on the face of the disclosure statement). The term "disclosure statement" is not defined by TILA. *Dawoudi*, 448 F. Supp. 3d at 928 (internal citations omitted). But as it relates to the relevant TILA provisions discussed, the term "disclosure statement" refers to the required "disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction." *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001); *see also Crum v. SN Servicing Corp.*, No. 1:19-cv-02045-JRS-TAB, 2020 WL 5629694, at *3 (S.D. Ind. Sept. 21, 2020) (citing *Evanto* v. *Fed. Nat'l Mortg. Ass'n*, 814 F.3d 1295, 1297 (11th Cir. 2016) ("A disclosure statement is a document provided before the extension of credit that sets out the terms of the loan.")).

Here, the Ohs do not allege that violations of §§ 1638(f) and 1639f(a) are "apparent on the face of the disclosure statement" as required by § 1641, nor could they as the failure to provide periodic statements and to timely credit payments would not appear in the disclosure statement. *See Crum*, 2020 WL 5629694, at *2 ("Neither a failure to timely credit received loan payments as required by § 1639(f) nor a failure to transmit periodic statements as required by § 1638(f) involves the disclosure statement; by definition, such noncompliance would occur after any pre-transaction disclosures."). Furthermore, the Ohs allege that these violations occurred after the loan origination. Accordingly, the Ohs' TILA claim is dismissed with prejudice. The Court need not address defendant's other arguments for dismissal.

**Conclusion**

For the foregoing reasons, defendant's motion to dismiss [53] Count II is granted without prejudice, and its motion to dismiss Count V is granted with prejudice. Further, the Court grants plaintiff leave to file an amended complaint within thirty days, in accordance with this Order.

**IT IS SO ORDERED.**

Date: 1/14/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge